(Lake Co., O., Common Pleas, 1901.)

THE STATE OF OHIO v. JOHN THOMAS.

1. Fish while roaming at will in public waters are animals *ferae naturae* , and are the property of the community at large; but they may become the subject of a qualified property in an individual if reclaimed, confined or dead; and if fit for food when such qualified property is acquired they become the subject of larceny.

2. Actual bodily seizure is not necessary in order to acquire such property in food fish. It may be acquired by confinement in nets or other contrivances where they may be taken at the pleasure of the owner; but such confinement must be actual and such as to deprive the fish of their natural liberty and render escape impossible.

3. Food fish in the "trap" or "pot" of a pound net set in public waters are not the subject of larceny so long as the aperture through which they entered is left open so that they may escape therefrom at will.

---

METCALFE, J.

The defendant has filed a motion in this case to direct a verdict in his favor on the evidence. Whether this shall be done depends on the solution of the question whether or not fish in the ' trap" or "pot" of a pound net in the waters of Lake Erie are the subject of larceny. It is conceded that wild animals while in a state of nature are the common property of the community and are not the subject of larceny. They only become such when caught or confined, or in some way brought under the dominion of man; and under the common law certain animals which are characterized in the books as of a "base nature" even when tamed or caught in traps or otherwise brought under the dominion of man, are not the subject of larceny at all. Thus, in Ohio, a dog. *State* v. *Lymus,* 26 Ohio St., 400; In New Hampshire a sable in a trap, *Norton* v. *Ladd,* 5 N. H., 203. Other cases are cited, but these are sufficient as illustrations. In *State* v. *Lymus* it is held that an indictment charging the defendant with breaking and entering a building in the night season with intent to steal a dog did not charge an offense within the criminal laws of Ohio. And in the New Hampshire case, it is held that charging a man with stealing a sable from a trap, is not slander. Both these decisions, and others of like character, are based on the ground that these animals are not the subject of larceny in any event, even though domesticated or dead, or otherwise brought completely under man's dominion, But with other animals fit for food, or otherwise useful to man, like deer, pheasants. rabbits, etc., the case is different, and they become the subject of a qualified property, and consequently the subject of larceny when caught or reclaimed. *Lawson on Rights and Remedies,* section 1367. 1 *Wharton Criminal Law,* section 869; 2 *Russell on Crimes,* 82; 2nd *Am. & Eng. Enc. L.* (2 Ed.), 242. And

with regard to food fish the same rules apply. While roaming at large in the public waters they are the common property of the community; when dead and in the possession of any one, or so caught and confined in a net or pond, or other enclosed place that they may be taken at pleasure, the owner acquires a qualified property right in them, and if taken from him unlawfully, it is trespass or larceny, according to circumstances. The fish claimed to have been taken in this case, are conceded to be food fish, so that if the taking of them in the trap of a pound net under the circumstances described in the evidence is a reduction to the possession of the owner of the net it was larceny to take them. Now what is necessary in order to bring fish wandering at will in the waters of Lake Erie sufficiently within the dominion of a man so that it can be stolen from him? In *Lawson's Rights and Remedies*, section 1367, it is said: "Encompassing and securing such animals with nets and toils or otherwise intercepting them in such a manner as to deprive them of their natural liberty, and to render escape impossible may justly be deemed to give possession of them to those persons who, by their industry and labor have used such means of apprehending them." Language to the same effect is used in 2nd Ency. of Law (2nd Ed.) 42 and numerous authorities cited. In *People v. Bridges*, 16 L. R. A., (Ills.), 684, Bailey, J., on page 686 says: "Fish in streams or bodies of water have always been classed by the common law as *ferae naturae* in which the riparian proprietor or owner of the soil covered by the water, even though he may have the sole and exclusive right of fishing in such waters, has at best, but a qualified property which can be rendered absolute only by their actual capture." In 18th Am. Dec. 553 Note, it is said: "To constitute such possession of animals *ferae naturae* as to enable the possessor to maintain trespass for them they must be brought into his actual power." In *Young v. Hitchins* 51 E. C. L., 606, the plaintiff while fishing cast a seine around a school of mackerel with the exception of a small opening which the seine did not quite fill up and through which in the opinion of experienced persons the fish could not escape, and the defendant entered with his boat and took the fish, it was held that the plaintiff's possession was not completed so as to enable him to maintain trespass. This case seems to be a leading case on this subject, for I find it cited and accepted as authority in almost every case I have read, and also in the text books. Lord Denman, C. J., in deciding the case used the following language: "It certainly results from the evidence in this case that the fish were reduced to a condition in which

it was in the highest degree probable that the plaintiff would become possessed of them. But it is equally certain that he had not become possessed. Whether the necessary possession be described by the word custodia or occupatio I think it is not attained until the plaintiff has brought the animals into his actual power." The following authorities also have some bearing upon the questions involved in this case: *State* v. *Krider*, 78 N. C., 481; 19 *Am. Dec.*, 348; 70 *Am. Dec.*, 258 and note; 41 *Am. Rep.*, 599; 17 *Am. Rep.*, 31; 25 *Alb. L. J.*, 444; 40 *Am. Rep.*, 81.

It will be seen from the authorities cited that in order to render fish or other wild animals the subject of larceny they must in some way be brought under the actual dominion of man. If they be killed and in the possession of the slayer; if caught and confined in traps or nets, or other contrivances, so that escape is rendered impossible and they may be taken at the pleasure of the owner they are then in his actual possession, and the unlawful taking of them may be larceny. Very likely it would be going too far to say that escape must be rendered impossible under all circumstances, as, for instance, the breaking down of apparently insuperable barriers. But the avenues of escape must be closed, and the chances at least reduced to a minimum. It is not enough that their capture is rendered in a high degree probable, or their escape improbable. Escape might be improbable to a rabbit chased by a hound, or of a deer from a rifle of an experienced hunter.

Now in this case can it be said that these fish were so confined in the nets, so reduced to possession as to have become the subject of larceny? It is undoubtedly true from the evidence that the fish were in the pot or trap of the pound nets. They entered this trap through an aperture two and one-half feet square, which remained open after the fish had entered. What was there to prevent the fish from turning around and coming out after he had entered the trap? It is said that the natural tendency of a fish to go toward deep water will keep him on the other side of the net and away from the opening. It is highly probable from the evidence that a large majority of the fish going into the net remain there. It may be improbable that very many will escape after getting in, but according to the evidence of expert fishermen they sometimes do come out of the opening after having been inside of the trap. Mr. Post says he has himself seen fish enter the opening and then turn around and come out. In any view of the case the fact presents itself that the aperture through which the fish enter the net is open, and it is only the natural stupidity of the fish that prevents them from

going out. Can it be said that a fish roaming at will, in public waters getting into a net of this kind can be so reduced to possession as to b? the subject of larceny while such an avenue of escape remains open to him? Such possession is not actual, it is only constructive. It renders it probable that the owner of the net will become actually possessed of the fish, but it is at most a probability and not possession itself.

As the legislature has not seen fit to make the act of taking fish from pound nets a crime a court can only do so by construction, and "constructive crimes are odious." The motion of the defendant to direct a verdict of not guilty is sustained.

*Harry P. Bosworth,* Prosecuting Attorney, and *Homer Harper,* for State.

*A. G. Reynolds* and *McTighe,* for defendant.